UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAMELA BURKE<br>Plaintiff<br><br>v.<br><br>MICHAEL ARAM, INC.<br>Defendant | : | NO.: 3:09cv 934 (SRU)<br>309CV00934 SRU<br><br>JUNE 11, 2009 |

## COMPLAINT AND JURY DEMAND

Plaintiff, Pamela Burke, by her attorneys, Rose Kallor, LLP, and for her Complaint alleges the following:

## NATURE OF THE ACTION

1. The plaintiff, Pamela Burke ("Plaintiff" or "BURKE"), brings this action to recover damages and obtain equitable relief as caused by defendant's breach of contract, wrongful discharge in violation of public policy and violation of Connecticut and/or New York wage laws. The plaintiff also brings a claim for promissory estoppel.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

3. At all relevant times BURKE was and still is a resident of Somers, Connecticut.

4. MICHAEL ARAM, Inc. ("ARAM, INC.") is a New Jersey Corporation with its principle place of business in North Bergen, New Jersey.

5. Personal jurisdiction is proper before this Court as the plaintiff resides in Connecticut, the plaintiff worked for the defendant in Connecticut, much of the negotiations leading up to the employment relationship between Michael Aram, Inc. (ARAM, INC.) and the plaintiff were initiated by ARAM, INC. by email or telephone to the plaintiff's home office in Connecticut or to her Connecticut mobile phone. Further, ARAM, INC does business nationally, advertises in Connecticut, sells its products in Connecticut through the internet and at various stores and derives a substantial portion of its revenues from business conducted in Connecticut.

6. In 2007 and earlier, Defendant reached out to BURKE while BURKE was employed by Li & Fung, a former employer, while BURKE was working in Connecticut at her home office, to establish a consulting relationship between Li & Fung and ARAM, INC. Many of the conversations leading up to that relationship took place between BURKE and ARAM, INC. from her Connecticut office telephone or her Connecticut mobile phone. Many of these communications were initiated by Defendants. That consulting relationship lasted a period of time. During this period, Defendant approached BURKE in 2007 and initiated discussions regarding the prospect of her working for ARAM INC. Many of these discussions between Defendant and BURKE took place while BURKE was in her Connecticut home office. Defendant initiated many of these communications. Defendant offered BURKE employment by email to BURKE while she was in her home office in Connecticut. That offer was memorialized

in writing and sent to her home office in Connecticut. That offer specifically contemplated that BURKE would be splitting her time between her home office in Connecticut and the New York Office. In fact, she was afforded with an allowance in the amount of $400 for home office supplies and her travel between New York and Connecticut.

7. During the course of BURKE'S employment with ARAM, INC., BURKE shared her time working between her home office in Connecticut and the New York office. Many of the communications between Defendant and BURKE which form the basis of the allegations in this complaint occurred between Defendant and BURKE while BURKE was working from her home office in Connecticut. Defendant initiated many of these communications.

8. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(c).

## PARTIES

9. ARAM, Inc. is in the business of selling high end home furnishings and other similar products. It employs more than 15 people.

## FACTS

10. On September 21, 2007, Sebastian Herald ("Mr. Herald"), Chief Executive Officer of ARAM, INC., sent BURKE an offer letter by email while BURKE was working in Connecticut, which was forwarded by Michael Aram ("Mr. Aram"), President of ARAM, INC, to Mr. Herald. Pursuant to the terms, ARAM, INC. offered BURKE the position of Vice President of Sales. The following were the terms of the proposed terms of the employment relationship:

Base Salary: $150,000
Bonus Tiers

- $1 Million in net sales over prior year (excluding Website and Retail Store) – **$15,000 total**
- $1.5 Million in net sales over prior year (excluding Website and Retail Store) – an additional $15,000 = **$30,000**
- $2 Million in net sales over prior year (excluding Website and Retail Store) – an additional $20,000 = **$50,000**
- 5% commission on all net sales over and above $2 Million net sales increase over year prior
- Overall compensation for projected 2008 sales – $200,000 plus

Travel Budget – to be determined

Allowance - $400/month inclusive of e-z pass, car mileage, office phone & internet, and office supplies.

Phone – A Black Berry phone will be provided under the Michael Aram, Inc. cell phone plan.

11. ARAM, INC. offered to BURKE that she could divide her time working between the New York Office and her home office in Connecticut.

12. At the time BURKE was offered the position with ARAM, INC., she was gainfully employed by a different employer. Based upon the compensation and other promises made in the offer letter, and the opportunity to split her time between New York and her home in Connecticut, she accepted the position with ARAM, INC.

13. At the time the ARAM, INC. announced BURKE'S hire, Mr. Herald noted: "Pam will split her time between the NY [headquarters] and her office in CT."

14. BURKE accepted the offer to work as the Vice President of Sales for ARAM, INC. and commenced her employment in November 2007.

15. Prior to ARAM, INC. hiring BURKE, net sales (less the Web and ARAM, INC.'s retail store) were approximately $8,312,000. In fiscal year 2008, sales were approximately $11,400,000, due, in large part, to the quality of BURKE'S performance for ARAM, INC.

16. One avenue for increasing sales was her ability to sell excess merchandise through a "Homegoods" program. Through her contacts and innovation, ARAM, INC. was able to recognize $453,488 in revenue on products that had long ago been paid for (and deducted) as a business expense.

17. After ARAM, INC. secured this revenue, ARAM, INC. informed BURKE in November 2008 that the monies earned through her Homegoods sales constituted "liquidation" income and not "revenue." ARAM, INC.'s actions cut BURKE'S compensation by approximately $23,000.

18. BURKE objected to this unilateral change in the terms of her compensation to, among others, Mr. Aram.

19. After BURKE'S complaint to Mr. Aram, BURKE was given irrational assignments from Mr. Herald, resulting in confusion of expectations.

20. BURKE unilaterally had the terms and conditions of her employment altered due to the ARAM INC's intent to force her to resign from employment.

21. Throughout her employment with ARAM, INC., BURKE has always performed her job satisfactorily.

22. On January 4, 2009, BURKE was called into a meeting in which she was informed that ARAM, INC.'s promise to permit her to work from her home office in Connecticut

would be discontinued. This meeting was designed to terminate and/or force BURKE to resign from her employment with ARAM, INC.

23. Thereafter, BURKE was terminated/constructively discharged/resigned on January 4, 2009.

24. Based upon the terms of her commission structure, BURKE is owed in excess of $**50,000** in earned commissions.

**COUNT ONE – BREACH OF CONTRACT AGAINST ARAM, INC.**

25. Plaintiff hereby incorporates by reference paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26. ARAM, INC. breached the terms of its express and/or implied contract with BURKE by not paying her all compensation due to her pursuant to the terms of said employment contract.

27. ARAM, INC. has breached its obligations to BURKE as required by the employment contract in that it failed to pay BURKE compensation or commissions in excess of $**50,000**.

28. As a result of ARAM, INC.'s willful and malicious breach of contract, BURKE has and will continue to suffer economic damages. BURKE will also incur substantial legal fees and costs.

**COUNT TWO – PROMISSORY ESTOPPEL AGAINST ARAM, INC.**

29. Plaintiff hereby incorporates by reference paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. In their offer letter, ARAM, INC. made a clear and definite promise to BURKE to pay her commissions and permit her to split her time between the New York and her Connecticut office, as stated in her offer of employment. In reasonable reliance on that promise, BURKE, who was gainfully employed at the time the offer was made by ARAM, INC., quit her job and accepted the position with ARAM, INC.

31. In relying on that promise, BURKE has and will continue to suffer economic and emotional distress damages. BURKE will also incur substantial legal fees and costs.

**COUNT THREE – FAILURE TO PAY WAGES IN VIOLATION OF ARTICLE 6 OF THE NEW YORK LABOR LAW**

32. Plaintiff hereby incorporates by reference paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. ARAM, INC. willfully refused to pay BURKE wages pursuant to Article 6 of the New York State Labor Law.

34. As a result of the willful failure of ARAM, INC. failure to pay BURKE her wages due, BURKE suffered economic and emotional distress damages. BURKE will incur legal fees.

**<u>COUNT FOUR</u> – FAILURE TO PAY WAGES IN VIOLATION OF CONN. GEN. STAT. SEC. 31-72**

35. Plaintiff hereby incorporates by reference paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. ARAM, INC and Mr. Aram willfully refused to pay BURKE wages and or compensation in violation of Connecticut General Statute Sec. 31-71(c), 31-71(g), and 31-72.

37. As a result of the willful failure of ARAM, INC. and Mr. Aram to pay BURKE the wages due to her, BURKE has suffered economic loss and emotional distress damages. BURKE will also incur legal fees and costs.

**<u>COUNT FIVE</u> – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

38. Plaintiff hereby incorporates by reference paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. Upon learning that BURKE would press for all compensation due her, ARAM, INC, through its agents, employees and servants, engaged in a pattern of retaliatory conduct that had the purpose and effect of causing BURKE to leave her employment. Those concerted activities included:

a. Unilaterally changing BURKE'S work site with the full knowledge that such an action would make her continued employment impossible;

b. Placing unreasonable work requirements upon her in an effort to compel her resignation.

40. It is the public policy of the State of Connecticut that employees may not be discharged for complaining to their employers when the employer fails to pay all compensation due. Said public policy is embodied within Conn. Gen. Stat. §31-70 through §31-76, and a cause of action for wrongful discharge for the exercise of said rights is implied therein.

41. As a result of the Defendants' conduct, BURKE asked to have time to "think about" the unilateral changes, including the change in work location and compensation structure. Upon attempting to communicate with ARAM, INC. two days later, she was advised she had "resigned" her position and would not be welcomed back.

42. The actions of ARAM, INC., as heretofore relayed, were designed to retaliate against BURKE for complaining about ARAM, INC.'s failure to pay compensation due to her. Further, ARAM, INC had the intent to create a work environment so intolerable that a reasonable person would feel compelled to resign.

43. While BURKE contends that she did not definitively resign, ARAM, INC. took her actions as a resignation and refused to reinstate her.

44. As a result of ARAM INC.'s actions, the plaintiff has suffered a loss of income, benefits and related compensation, and will continue to suffer such diminishment in earnings for the foreseeable future.

45. As a result of ARAM INC.'s actions, the plaintiff has suffered emotional distress, and has incurred legal fees and costs.

WHEREFORE, the plaintiff, PAMELA BURKE, claims:

(a) Reinstatement;

(b) Economic Damages;

(c) Compensatory Damages (including double damages);

(d) Punitive Damages;

(e) Attorneys' Fees and Costs;

(f) Liquidated damages;

(g) Interest; and

(h) Such relief as the Court deems fair, just and equitable.

**JURY TRIAL DEMANDED**

Plaintiff respectfully requests a jury trial on all questions of facts raised by her complaint.

THE PLAINTIFF,
PAMELA BURKE

By ______________________________

Michael J. Rose, Esq. (ct 14803)
Rose Kallor, LLP
750 Main Street, Suite 606
Hartford, CT 06103
(860) 748-4660
(860) 241-1547 (Fax)
E-Mail: mrose@rosekallor.com